UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

RESPONDENT,

VS. CASE NO. 8:15-CR-255-T-23TGW

BOBBY MUHAMMAD,

MOVANT.
______________________/

# MEMORANDUM OF LAW IN SUPPORT OF MOVANT'S 28 U.S.C. § 2255 MOTION TO VACATE

## PROCEDURAL BACKGROUND

On October 26, 2015, Bobby Muhammad ("the Movant") pled guilty to theft of government property, in violation of 18 U.S.C. § 641 (Count Four); and aggravated identity theft, in violation of 18 U.S.C. § 1028A (Count Eleven). (Doc#41).(1)

On February 1, 2016, the Movant was sentenced to a term of 70-months imprisonment followed by a term of 36-months Supervised release as to Count Four; and a term of 24-months imprisonment as to Count Eleven to run consecutive to his term of imprisonment for Court Four. (Doc#54-55). the Movant did not appeal.

---

(1) The Movant is a pro se litigant in the instant, proceeding, therefore this Court is required to construe this motion liverally. See Gunn v. Newsome, 881 F.2d 949, 961 (11th Cir. 1989).

## FACTUAL BACKGROUND

On July 15, 2015, a grand jury returned a fifteen count indictment charging the Movant with Conspiracy to defraud the United States, in violation of 18 U.S.C. § 371 (Count One); Theft of Government property, in violation of 18 U.S.C. § 641 (Counts Two thru Eight); and Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A. (Counts Nine thru fifteen). (Doc#1).

On September 30, 2015, the Movant successfully negotiated a plea agreement with the United States. (Doc#35). As part of the plea agreement, the Movant agreed to plead guilty to Counts Four and Eleven of the indictment, Id. at 1, and the United States agreed to dismiss the remaining counts (1-3, 5-10, and 12-15) of the indictment at sentencing. Id. at 3. The United States and the Movant jointly agreed that the final restitution amount would be determined at sentencing. Id. at 3. Additionally, the Movant expressly waived his right to appeal his sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines...Id. at 15. The Factual basis for the Movant's guilty plea states that:

"[F]rom at least in or around December 2011, through and including the present, the defendant, Bobby Muhammad, entered into a conspiracy and scheme to defraud the Internal Revenue Service ("IRS"), a bureau of the United States Department of the Treasury. As part of the scheme, Muhammad, aided and abetted by others, would obtain and possess the means of identification of

third parties without their knowledge. Muhammad, aided and abetted by others, would electronically file and cause the filing of fraudulent federal income tax returns using the means of identification obtained from the identity theft victims, including their names, dates of birth, and social security numbers. Those tax returns would direct that fraudulent refunds be wired from the IRS to various reloadable debit cards obtained and used by Muhammad.

For example, H&R Block issued a reloadable debit card ending in - 9614 in the name of Bobby Muhammad on January 29, 2013. the card was delivered to 3200 E. Comanche Drive, Tampa, Florida, an address associated with Muhammad and his family members, including his mother. Documents provided by H&R Block Bank show that fraudulently obtained tax refunds were loaded onto this card including the following:

On January 30, 2013, a return in Muhammad's own name was filed claiming a refund that was directed to be loaded onto this card, but it was rejected by the IRS. The return claimed a refund in the amount of $4,879. This return had the same characteristics of other returns associated with Williams and Muhammad, including same IP address, same employment information, same income amounts, and same refund amounts, among other things. The email address used to electronically file Muhammad's return was freebricks1515@gmail.com, which is an email address used by Muhammad.

On March 28, 2013, a fraudulent tax return was filed claiming a refund in the amount of $9,377. The refund resulted from the electronic filing of a joint return using the names of

L.F. (deceased) and E.S. (also deceased). This refund was loaded onto the H&R Block card ending 9614 on April 17, 2013. the Virginia office of Vital Statistics confirmed that L.F. died on January 7, 2013. E.S. died in Puerto Rico on January 14, 2013. This return was filed using the email address TiffanyWilliams11323@yahoo.com and listed the address 11324 Bridge Pine Drive, Riverview, Florida (Williams and Muhammad lived together at 11323 Bridge Pine Drive, used this neighboring address on multiple false returns, and Muhammad was arrested on this street in 2012.) Counts Four and Eleven.

On June 15, 2013, a fraudulent tax return was filed using the names H.M. and A.M., resulting in a refund of $7,217, which was loaded onto this card in Bobby Muhammad's name on or about July 17, 2013. H.M. died on April 24, 2012 and A.M. died April 16, 2012. This return as filed from an IP address that is linked to numerous other fraudulent tax returns filed by Tiffani Williams, as indicated by the email address associated with her online accounts.

On March 28, 2013, a fraudulent tax return was filed using the names S.R. and R.R., resulting in a refund of $6,935 being loaded onto the card on April 10, 2013. S.R. died on January 30, 2013, and R.R. died on February 1, 2013. This return was filed using an email address Tommie1234@yahoo.com, which is an address associated with returns filed by Tiffani Williams. This return listed an address of 11337 Bridge Pine Drive, Riverview, Florida. Overt Act a.1, b.1; Counts Two, Nine

On April 13, 2013, a fraudulent tax return was filed using the names of M.R. and S.R., resulting in a refund of $7,019

being loaded onto the card on May 2013, M.R. died on February 24, 2013, and S.R. died on January 1, 2013.

In total, approximately $30,548.22 of tax refunds were loaded onto this card in the defendant's name resulting from the filing of fourteen fraudulent refunds. Eleven of the false refunds, including the four listed above, were filed in the names of deceased individuals. This card was primarily used to withdraw funds from ATMs, including:

* ATM transactions at SunTrust in Brandon, Florida on April 10, 2013, to three consecutive withdrawals of $800 each or $2,400 total.
* ATM transactions on April 11, 2013, at the same SunTrust for three consecutive withdrawals of $800 each for a total of $2,400.
* ATM transactions at a SunTrust ATM at the Orlando Prime Outlets on April 17, 2013, for four consecutive withdrawals of $800 for three and $400 for the fourth, for a total of $2,800.
* ATM withdrawals at Summerfield Cross terminal station in Riverview, Florida on April 18, 2013, for three consecutive withdrawals of $800 for a total of $2,400.

Each time funds were loaded onto the card, Muhammad or those working with him would make ATM withdrawals at the same ATM locations in a manner consistent with individuals trying to rapidly extract the proceeds of the fraud.

Agents reviewed the transaction history for the H&R Block reloadable debit card ending in - 9614 issued in the name of Bobby Muhammad. Among other things, agents observed a charge from Archives.com, which is an affiliated company of

Ancestry.com. These websites provide information on deceased individuals, including personally identifiable information or "Pll" that Muhammad and his coconspirators used to file fraudulent federal income tax returns. Records produced by Ancestry.com show that the charge on the H&R Block Card in Muhammad's name was associated with the establishment of an account on or about June 6, 2013, in the name of Bobby Muhammad using email address freebricks1515@gmail.com, which is an email address known to be used by Muhammad and associated with numerous false federal income tax returns that were filed in this conspiracy.

Investigators determined that Muhammad and his conspirators filed fraudulent federal income tax returns using the stolen identities of over 400 individuals to make claims for refunds totaling approximately $3,089,219. Id. at 17-21.[2]

During their plea negotiations, the United States assured the Movant that he would not be held accountable for anything other than his own conduct during the conspiracy.

On October 26, 2015, in accordance with the written plea agreement, the Movant pled guilty to Counts Four and Eleven of the indictment. (Doc#41, 43, 45). Thereafter, a Presentence Investigation Report (PSR) was prepared. (Doc#50). In paragraph 21 of the PSR, the Probation Officer states that the Movant is accountable for the entire intended loss of $3,089,219 for guideline calculation purposes; and in paragraph 22, the

---

(2) Copies of the pages from the written plea agreement mentioned herein are attached hereto as "Exhibit A."

Probation Officer states that the Movant is accountable for the entire actual loss of $650,631 in restitution to the IRS. **Id. at** 7.

In paragraph 32, the Probation Officer determined that the Movant's base offense level for his offense under **§ 641** was 6, pursuant to **U.S.S.G. §** 2B1.1(a)(2). However, in paragraph 33, the probation applied an 16-level enhancement to the Movant's base offense level pursuant to **U.S.S.G. § 2B1.1(b)(1)(I)** because he states that the intended loss amount applicable to the Movant is more than $1,500,000 but not more than $3,500,000. **Id. at 8.** In paragraph 34, the Probation Officer applied an additional 2-level enhancement to the Movant's base offense level pursuant to **§ 2B1.1(b)(2)(A)** stating that the Movant's offense involved 10 or more victims: and in paragraph 35, the Probation Officer applied another 2-level enhancement to the Movant offense level pursuant to **§ 2B1.1(b)(11(B)(i)** stating that the Movant's offense involved the production of unauthorized access devices. **Id. at 9.** In paragraph 41 and 42, the Probation Officer decreased the Movant's offense level by a total of 3-levels based on the Movant's acceptance of responsibility. **Id.** The Probation Officer concluded in paragraph 43 that the Movant's total offense level is 23. **Id.** The Probation Officer further concluded in paragraph 59 that the Movant's criminal history category is V. **Id. at 14.** Finally, in paragraph 106, the Probation Officer states that based on a total offense level of 23 and a criminal history category of V, the Movant guideline range is 84-months to 105-months imprisonment on Count Four; and the minimum term of imprisonment required by Statute on Count

Eleven. Id. at 20.[3]

The Movant's Attorney Debra B. Tuomey (Ms. Tuomey) filed objections to the PSR, but did not advance any objections to paragraphs 21 or 22, the Probation Officer's calculations as to the total intended loss that the Movant is accountable for; and the total actual loss that the Movant is accountable for in restitution to the IRS. Ms. Tuomey did object to paragraph 33 on the grounds that the Court should utilize the actual loss in the amount of $650,631, rather than the intended loss of $3,089,219 for purposes of the enhancement pursuant to § 2B1.1(b)(1). However, in her objection to paragraph 33, Ms. Tuomey did not assert that the $3,089,219 in intended loss was not the amount of intended loss applicable to the Movant. (Doc#51 at 8-9).

At sentencing, the Movant objected to paragraph 21 of the OSR, disputing that the $3,089,219 in intended loss during the entire conspiracy was the actual intended loss applicable to him; and requested that the government put forward evidence to prove that he was, in fact, accountable for that amount. (See Sentencing Transcripts at 14.).[4] The government stated that it was prepared to do so, but the Court never had the government present any evidence to prove that the $3,089,219 in intended loss was the actual intended loss amount accountable to the Movant for the time period that he was involved in the conspiracy. However, the Court did not rule on the movant's objection to paragraph 21 of the PSR and/or ruled on Ms.

---

(3) Copies of the pages from the PSR mentioned herein are attached hereto as "Exhibit B."

(4) Copies of the pages from the sentencing transcripts mentioned herein are attached hereto as "Exhibit C."

Tuomey's objection to paragraph 33. Id. at 16; see also Doc#54 at 1.(5)

During the sentencing hearing, the government stated that there is no evidence in this case because there was no trial. The government then advised the Court again that it was prepared to put forward evidence through one of its agents. Id. at 21. The government further advised the Court that it had provided the discovery and loss information on the totality of Tiffani Williams conduct to the Movant so that he could see it. But absolutely made clear that the Movant was not getting held accountable for anything other than his own conduct during the pendency of the three years that he was involved in the conspiracy.(6) Id. at 23. The government also admitted that it knew that the Movant had withdrew from the conspiracy prior to 2015, Id. at 26, but did not state the specific or approximate date of the Movant's withdrawal. Id. The Movant then advised the Court that his only involvement in the conspiracy was in 2013, not 2011, 2012, 2014, or 2015. Id. at 30.

**GROUND ONE**

**INEFFECTIVE ASSISTANCE OF COUNSEL DURING THE SENTENCING PROCEEDING**

In the instant ground for relief, the Movant asserts that he was denied his Sixth Amendment Constitutional right to the effective assistance of Counsel during his sentencing proceedings because his Attorney Ms. Tuomey (1) failed to object to paragraph 21 of the PSR; (2) failed to object to paragraph 22

---

(5) A copy of Doc#54 is attached hereto as "Exhibit D."

(6) A copy of the Movant's spreadsheet for his conduct is attached hereto as "Exhibit E."

of the PSR; and (3) failed to object to the Court's failure to rule on the Movant's objection to the intended loss amount accountable to him paragraph 21 of the PSR.

## FACTS

Prior to the Moavant entering his guilty plea, the government provided his Attorney with a spreadsheet of loss information on the totality of Tiffani Williams' conduct that occurred during the entire conspiracy and a spreadsheet of the Movant's loss information that occurred during the short period that he was involved in the conspiracy through discovery material so that Counsel could see that the Movant was only getting held accountable for his own conduct during his involvement in the conspiracy. **(Sentencing Transcripts at 23).** The total intended loss of the entire conspiracy is $3,089,219. However, the Movant's spreadsheet of the loss information that occurred during the short period that he was involved in the conspiracy shows that the intended loss amount that he is accountable for is $212,115 and the actual loss amount that he is accountable for is $66,201. **(See "Exhibit E" at 2).** Paragraph 21 of the PSR, however, states that the Movant is accountable for the total intended loss amount of the entire conspiracy, $3,089,219, for guideline calculation purposes. Additionally, paragraph 22 states that the Movant is accountable for the actual loss amount of $650,631, in restitution to the IRS. Finally, paragraph 33 applied on 16-level enhancement pursuant to § 2B1.1(b)(1)(I) to the Movant's offense level stating that the intended loss amount **[accountable to the Movant]** is more

than $1,500,000 but not more than $3,500,000. The Movant's Attorney did not advance any objections to paragraph 21 or 22 prior to or at the sentencing hearing. At sentencing, the Movant orally objected to the intended loss that was accounted to him in paragraph 21, $3,089,219, and ask the Court to have the government to put on evidence to prove that amount of intended loss was accountable to him. **(Sentencing Transcripts at 14).** However, the Court failed to rule on the Movant's objection to paragraph 21. **(Doc#54 at 1).**

## ARGUMENTS AND CITATION OF AUTHORITY

For as far back as Powell v. Alabama, 287 U.S. 45 (1932), the Supreme Court has recognized that the Sixth Amendment right to Counsel exists, and is needed, in order to protect the fundamental right to a fair trial. For that reason, the Court recognized that **"the right to Counsel is the right to the effective assistance of Counsel."** See McMann v. Richardson, 397 U.S. 759, 771, n.14 (1970). The precedents also establish that there exists a right to the effective assistance of Counsel during sentencing. **See** Glover v. United States, **531 U.S. 198, 203-204 (2001).** In order to prevail on a claim of ineffective assistance of Counsel, a defendant must show both (1) **that his Counsel's performance was deficient; and (2) that he suffered prejudice as a result of that deficient prejudice as a result of that deficient performance. See** Strickland v. Washington, 466 **U.S. 668, 687-688 (1984).** To establish deficient performance, a defendant must show that Counsel's representation fell below an objective standard of reasonableness. **Id.** at 688. To demonstrate

prejudice, a defendant must show that there is a reasonable probability that, but for Counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694. However, in the case of alleged sentencing errors, the defendant must demonstrate that there is a reasonable probability that, but for Counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. See Glover, 531 U.S. at 203-204. A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has sixth Amendment significance." Id. at 203.

(1) COUNSEL'S FAILURE TO OBJECT TO PARAGRAPH 21 OF THE PSR

Section 2B1.1(a)(1) of the United States Sentencing Guidelines provides for level increases for losses exceeding certain amounts in, inter alia, fraus cases. See U.S.S.G. § 2B1.1(a)(1). Section 2B1.1(b)(1) set out a schedule in which greater amounts of actual or intended monetary losses are coupled with correspondingly greater increases to a defendant's offense level. See U.S.S.G. § 2B1.1(b)(1). For an example, if the intended loss is the greatest of the loss amount and is $150,000, but less than $250,000, an increase of 10-levels is applied to the defendant's offense level. See U.S.S.G. § 2B1.1(b) (1)(F). If the intended loss is the greatest of the lost amount and is $1,500,000, but less than $3,500,000, an increase of the 16-level is applied to the defendant's offense level. See U.S.S.G. § 2B1.1(b)(1)(I).

Here, paragraph 21 of the PSR states that the Movant is

accountable for the intended loss of $3,089,219. Therefore, applied an 16-level increase to the Movant's offense level pursuant to § 2B1.1(b)(1)(I). However, the spreadsheet of the Movant's loss information shows that the intended loss amount that he is accountable for is $212,115. Which, only allow an 10-level increase in the Movant's offense level under § 2B1.1(b)(1)(F). Based on these facts, the Movant asserts that his Attorney's failure to object to paragraph 21 of the PSR's intended loss amount accountable to him, fell below an objective standard of reasonableness. Strickland, 466 U.S. at 688. The Movant further asserts that he suffered prejudice because there is a reasonable probability that, but for Counsel's errors, the result of his sentencing proceeding would have been less harsh due to a reduction in his offense level. See Glover, 531 U.S. at 203-204. Specifically, a 6-level reduction because the intended loss of $212,115 only allows a 10-level increase in a defendant's offense level.

(2) COUNSEL'S FAILURE TO OBJECT TO PARAGRAPH 22 OF THE PSR

Here, paragraph 22 of the PSR states that the Movant is accountable for the actual loss amount of $650,631 in restitution to the IRS. Because there was no trial in this case, there is no evidence that shows that the actual loss amount in the conspiracy was $650,631. However, the Movant's Attorney was in possession of his spreadsheet that was provided to her by the government that shows that the actual loss amount that the Movant is accountable for is $66,201. (See "Exhibit E" at 2). This is a significant difference in the loss amount accountable

to the Movant. Based on these facts, the Movant asserts that his Attorney's failure to object to paragraph 22 of the PSR's calculation of the restitution amount that he owes to the IRS fell below an objective standard of reasonableness. Strickland, 466 U.S. at 688. The Movant further asserts that he suffered prejudice because there is a reasonable probability that, but for counsel's errors, the results of his restitution owed to the IRS would have been different. Id. at 694. Specifically, the Movant would have only been accountable for $66,201 in restitution, rather than $650,631.

**(3) COUNSEL'S FAILURE TO OBJECT TO THE COURT'S FAILURE TO RULE ON THE MOVANT'S OBJECTIONS TO THE INTENDED LOSS AMOUNT ACCOUNTABLE TO HIM IN PARAGRAPH 21 OF THE PSR**

Due process protects the right not to be sentenced on the basis of false information. See Shukwit v. United States, 973 F.2d 903, 904 (11th Cir. 1990). Under Rule 32, "a district court must rule on a factual dispute to the PSR or determine that a ruling is unnecessary either because it will not affect sentencing; or because the Court will not consider the matter in sentencing." See Fed.R.Crim.P. 32(i)(3)(B)' see also United States v. O'Neill, 767 F.2d 780, 787 (11th Cir. 1985)(remanding for resentencing where the district court "failed to make findings as to each controverted point or, alternatively, a determination that no finding was necessary because the disputed matter would not be taken into account"). Rule 32 also permits the sentencing judge "for good cause [to] allow a party to make a new objection at any time before sentence is imposed." See

Fed.R.Crim.P. 32(i)(1)(D); see also United States v. Weir, 51 F.3d 1031, 1033 (11th Cir. 1995)(noting that error is preserved if a relevant objection is raised after the presentation of the PSR, but before the actual imposition of the sentence). Strict adherence to the requirements of Rule 32 is required. See United States v. Lopez, 907 F.2d 1096. 1101 (11th Cir. 1990). Moreover, "once a defndant objects to a fact contained in the PSR, the government bears the burden of proving that disputed fact by a preponderance of the evidence." See United States v. Martinez, 584 F.3d 1022, 1027 (11th Cir. 2009). "Absent a stipulation or agreement between the parties, an Attorney's factual assertions at a sentencing hearing do not constitute evidence that a district court can rely on." See United States v. Washington, 714 F.3d 1358, 1361 (11th Cir. 2013). Ultimately, "it is the district courts duty to ensure that the government carries this burden by presenting reliable and specific evidence." Martinez, 584 F.3d at 1027. And if the Court breaches this duty by imposing a sentencing enhancement without demanding that the government present sufficient evidence to support a disputed, underlying fact, the Eleven Circuit Court of Appeals generally will vacate and remand. See Id. at 1029; see also Washington 714 F.3d at 1362-63 (vacating the defendant's sentence because the district court imposed a sentencing enhancement based on the government's unsupported representations).

Here, the Movant orally objected to the loss amount accountable to him in paragraph 21 of the PSR, $3,089,219 and requested the Court to have the government present evidence to support that amount. (Sentencing Transcripts at 14). The

government told the Court that there was no evidence in this case because there was no trial, but advised the Court that it was prepared to put forward evidence through the testimony of one of its agents. **Id. at 21.** The Government also advised the Court that it had stipulated and agreed with the Movant that he would not be held accountable for any loss other than his own conduct during the pendency of the three years that he was involved in the conspiracy. **Id. at 23.** The stipulated spreadsheet of the Movant's conduct during the time that he was involved in the conspiracy stipulates that the intended loss amount that he is accountable for is $212,115. **(See "Exhibit E" at 2).**

The district court did not require the government to present any evidence to support the $3,089,219 in intended loss, and did not rule on the Movant's objection. **(Doc#54 at 1).** However, the Court applied a 16-level enhancement to the Movant's offense level based on the $3,089,219 in intended loss. By doing so, the district court breached its duty in imposing a sentencing enhancement without demanding that the government present sufficient evidence to support the disputed intended loss amount accountable to the Movant, $3,089,219, **Washington, 714 F.3d at 1362-63**; and violated **Rule 32** by failing to rule on the Movant's objection to the intended loss accountable to him in paragraph 21 of the PSR. **Lopez, 907 F.2d at 1101.** Based on these facts, the Movant asserts that his Attorney's failure to object to the Court's failure to rule on his objection to the intended loss amount accountable to him in paragraph 21 of the PSR fell below an object standard of reasonableness. **Strickland,**

466, U.S. at 688. This is so because there was no evidence in this case that supported an intended loss of $3,089,219 and the stipulated intended loss amount accountable to the Novant, which was agreed upon by the government, is $212,115, not $3,089,219. The Movant further asserts that he suffered prejudice because there is a reasonable probability that, but for Counsel's errors, the result of his sentencing proceeding would have been less harsh due to a reduction in his offense level. See Glover, 531 U.S. at 203-204. Specifically, the Movant's offense level would have been reduced by 6-levels because the stipulated intended loss of $212,115 only allow a 10-level enhancement in a defendant's offense level. Moreover, as part of the Movant plea agreement, he waived his right to appeal his sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines. (Doc#35 at 15). Based on this fact, it was extremely important for the Movant to get his objection to the intended loss amount accountable to him in paragraph 21 of the PSR ruled at sentencing. Because there is no evidence in this case to support an intended lost amount greater than the amount stipulated by the Movant and the government of $212,115, the record do not conclusively show that the Movant is not entitled to relief, the Court is required to conduct an evidentiary hearing to resolve this ground. See United States v. Yizar, 956 F.2d 230, 234 (11th Cir. 1992)(district court must hold an evidentiary hearing where court cannot state conclusively that the facts alleged by petitioner, taken as true, would present no ground for relief). Therefore, the Movant

request that this Court order an evidentiary hearing and rule on the merits of his claim.

## CONCLUSION

**WHEREFORE,** the Movant ask that this Court grant him the relief requested herein and any other relief available to him.

Dated: February 15, 2017

Respectfully submitted,

Bobby Muhammad
Reg. No. 62765-018
F.C.I. Coleman-Medium
P.O. Box 1032
Coleman, Florida 33521

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that a true and correct copy of the foregoing has been served on the following below by placing it in the prison mailbox on this 15th day of February, 2017, postage prepaid:(7)

cc: United States Attorney's Office
400 N. Tampa Street
Suite 3200
Tampa, Florida 33602

Bobby Muhammad

**(7) Because of the date, the Movant would like to aware the Court of the Mailbox rule that is applicable to him.**

" EXHIBIT A "

" EXHIBIT A "

AF Approval ___ Chief Approval ___

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 8:15-cr-255-T-23TGW

BOBBY MUHAMMAD

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by A. Lee Bentley, III, United States Attorney for the Middle District of Florida, and the defendant, Bobby Muhammad, and the attorney for the defendant, Debra B. Tuomey, mutually agree as follows:

A. **Particularized Terms**

1. Count(s) Pleading To

The defendant shall enter a plea of guilty to Counts Four and Eleven of the Indictment. Count Four charges the defendant with theft of government property, in violation of 18 U.S.C. § 641. Count Eleven charges the defendant with aggravated identity theft, in violation of 18 U.S.C. § 1028A.

2. Maximum Penalties

Count Four carries a maximum sentence of ten years imprisonment, a fine of up to $250,000, a term of supervised release of not more than three years, and a special assessment of $100.. Count Eleven carries a maximum sentence of two years consecutive to any term of imprisonment for

4. Counts Dismissed

At the time of sentencing, the remaining count(s) against the defendant, Counts One through Three, Five through Ten, and Twelve through Fifteen, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5. No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement related to the facts in this agreement.

6. Mandatory Restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. §§ 3663A(a) and (b), defendant agrees to make full restitution to the United States Treasury in the amount of approximately $650,631. The defendant acknowledges, however, that the final restitution amount will be determined at the time of sentencing.

7. Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted

such decision is consistent with the government's recommendations contained herein.

7. Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8. Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11. Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

FACTS

From at least in or around December 2011, through and including the present, the defendant, Bobby Muhammad, entered into a conspiracy and scheme to defraud the Internal Revenue Service ("IRS"), a bureau of the United States Department of the Treasury. As part of the scheme, Muhammad, aided and abetted by others, would obtain and possess the means of identification of third parties without their knowledge. Muhammad, aided and abetted by others, would electronically file and cause the filing of fraudulent federal income tax

returns using the means of identification obtained from the identity theft victims, including their names, dates of birth, and social security numbers. Those tax returns would direct that fraudulent refunds be wired from the IRS to various reloadable debit cards obtained and used by Muhammad.

For example, H&R Block issued a reloadable debit card ending in -9614 in the name of Bobby Muhammad on January 29, 2013. The card was delivered to 3200 E Comanche Drive, Tampa, Florida, an address associated with Muhammad and his family members, including his mother. Documents provided by H&R Block Bank show that fraudulently obtained tax refunds were loaded onto this card including the following:

- On January 30, 2013, a return in Muhammad's own name was filed claiming a refund that was directed to be loaded onto this card, but it was rejected by the IRS. The return claimed a refund in the amount of $4879. This return had the same characteristics of other returns associated with Williams and Muhammad, including same IP address, same employment information, same income amounts, and same refund amounts, among other things. The email address used to electronically file Muhammad's return was freebricks1515@gmail.com, which is an email address used by Muhammad.

- On March 28, 2013, a fraudulent tax return was filed claiming a refund in the amount of $9377. The refund resulted from the electronic filing of a joint return using the names of L.F. (deceased) and E. S. (also deceased). This refund was loaded onto the H&R Block card ending 9614 on April 17, 2013. The

Virginia office of Vital Statistics confirmed that L.F. died on January 7, 2013. E.S. died in Puerto Rico on January 14, 2013. This return was filed using the email address TiffanyWilliams11323@yahoo.com and listed the address 11324 Bridge Pine Drive, Riverview, FL (Williams and Muhammad lived together at 11323 Bridge Pine Drive, used this neighboring address on multiple false returns, and Muhammad was arrested on this street in 2012.) **Counts Four and Eleven**

- On June 15, 2013, a fraudulent tax return was filed using the names H.M. and A.M., resulting in a refund of $7217, which was loaded onto this card in Bobby Muhammad's name on or about July 17, 2013. H.M. died on April 24, 2012 and A.M. died April 16, 2012. This return as filed from an IP address that is linked to numerous other fraudulent tax returns filed by Tiffani Williams, as indicated by the email address associated with her online accounts.

- On March 28, 2013, a fraudulent tax return was filed using the names S.R. and R.R., resulting in a refund of $6935 being loaded onto the card on April 10, 2013. S.R. died on January 30, 2013, and R.R. died on February 1, 2013. This return was filed using an email address Tommie1234@yahoo.com, which is an address associated with returns filed by Tiffani Williams. This return listed an address of 11337 Bridge Pine Drive, Riverview, FL. **Overt Act a.1, b.1; Counts Two, Nine**

- On April 13, 2013, a fraudulent tax return was filed using the names of M.R. and S. R., resulting in a refund of $7019 being loaded onto the card on

May 1, 2013. M.R. died on February 24, 2013, and S.R. died on January 1, 2013.

In total, approximately $30,548.22 of tax refunds were loaded onto this card in the defendant's name resulting from the filing of fourteen fraudulent refunds. Eleven of the false refunds, including the four listed above, were filed in the names of deceased individuals. This card was primarily used to withdraw funds from ATMs, including:

- ATM transactions at SunTrust in Brandon, FL on April 10, 2013, for three consecutive withdrawals of $800 each or $2400 total.
- ATM transactions on April 11, 2013, at the same SunTrust for three consecutive withdrawals of $800 each for a total of $2400.
- ATM transactions at a SunTrust ATM at the Orlando Prime Outlets on April 17, 2013, for four consecutive withdrawals of $800 for three and $400 for the fourth, for a total of $2800.
- ATM withdrawals at Summerfield Cross terminal station in Riverview, FL on April 18, 2013, for three consecutive withdrawals of $800 for a total of $2400.

Each time funds were loaded onto the card, Muhammad or those working with him would make ATM withdrawals at the same ATM locations in a manner consistent with individuals trying to rapidly extract the proceeds of the fraud.

Agents reviewed the transaction history for the H&R Block reloadable debit card ending in -9614 issued in the name of Bobby Muhammad. Among other things, agents observed a charge from Archives.com, which is an affiliated company of Ancestry.com. These websites provide information on deceased individuals, including personally identifiable information or "PII" that Muhammad

and his coconspirators used to file fraudulent federal income tax returns. Records produced by Ancestry.com show that the charge on the H&R Block Card in Muhammad's name was associated with the establishment of an account on or about June 6, 2013, in the name of Bobby Muhammad using email address freebricks1515@gmail.com, which is an email address known to be used by Muhammad and associated with numerous false federal income tax returns that were filed in this conspiracy.

Investigators determined that Muhammad and his conspirators filed fraudulent federal income tax returns using the stolen identities of over 400 individuals to make claims for refunds totaling approximately $3,089,219.

12. Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

" EXHIBIT B "

" EXHIBIT B "

information or "PII" that Muhammad and his coconspirators used to file fraudulent federal income tax returns.

15. Records produced by Ancestry.com show that the charge on the H&R Block Card in Muhammad's name was associated with the establishment of an account on or about June 6, 2013, in the name of Bobby Muhammad using email address freebricks1515@gmail.com, which is an email address known to be used by Muhammad and associated with numerous false federal income tax returns that were filed in this conspiracy.

16. Investigators determined that Muhammad was involved in filing fraudulent tax returns using the stolen identities of approximately 400 individuals, many of whom were deceased at the time of filing.

17. In filing these false returns, Williams, Muhammad, and others working with them claimed refunds in the approximate amount of $3,089,219. These filings resulted in Williams, Muhammad, and others working with them, receiving approximately $650,631 in fraudulently obtained federal income tax refunds.

*Loss Accountability*

18. Loss is the greater of actual loss or intended loss. USSG §2B1.1,comment.(n.3(A)).

19. "Actual loss" means the reasonably foreseeable pecuniary harm that resulted from the offense. USSG § 2B1.1,comment.(n.3(A)(i)). The actual loss to the United States Treasury Department and IRS in this case is $650,631.

20. "Intended loss" means the pecuniary harm that was intended to result from the offense; and includes intended pecuniary harm that would have been impossible or unlikely to occur. USSG § 2B1.1,comment.(n.3(A)(ii). The intended loss in this case is $3,089,219.

21. Because the intended loss is greater, Muhammad is accountable for the intended loss value of $3,089,219 for guideline calculation purposes.

*Restitution Accountability*

22. Because the actual loss in this case is $650,631, Muhammad is accountable, jointly and severally with Williams, for this amount in restitution to the IRS.

**<u>Victim Impact</u>**

23. As a result of the offense, the United States Treasury Internal Revenue Service incurred a loss of $650,631.

24. The government has provided that the victims of the counts of conviction are deceased.

25. In a case involving means of identification, "victim" means any individual whose means of identification was used unlawfully or without authority. USSG 2B1.1, comment. (n.4(E)).

26. The government has provided information that Muhammad is accountable for fraudulently filing for tax refunds in the names of 400 individual tax payers. Therefore, for guideline calculation purposes, Muhammad unlawfully used means of identification of those 400 taxpayers without authority.

**Adjustment for Obstruction of Justice**

27. The probation officer has no information indicating the defendant impeded or obstructed justice.

**Adjustment for Acceptance of Responsibility**

28. The defendant pled guilty pursuant to a written plea agreement which contained certain stipulated facts. The defendant was interviewed by the probation officer and provided a statement wherein the defendant admitted involvement in the offense. The defendant stated that he was remorseful for committing this offense.

**Offense Level Computation**

29. The 2015 Guidelines Manual, incorporating all guideline amendments, was used to determine the defendant's offense level. USSG §1B1.11.

30. Count Four is a conviction for Theft of Government Property pursuant to 18 U.S.C. § 641, for which the applicable guideline is USSG §2B1.1.

31. Count Eleven is a conviction for Aggravated Identity Theft pursuant to 18 U.S.C. § 1028A. If the defendant was convicted of violating 18 U.S.C. § 1028A, the guideline sentence is the term of imprisonment required by statute. Chapters Three (Adjustments) and Four (Criminal History and Criminal Livelihood) shall not apply to that count of conviction. USSG § 2B1.6.

32. **Base Offense Level:** The guideline for 18 U.S.C. §641 offenses is found in USSG §2B1.1 of the guidelines. USSG §2B1.1(a)(1) of the guidelines provides for a base offense level of 7, if the defendant was convicted of an offense that has a statutory maximum term of imprisonment of 20 years or more. Otherwise the base offense level is 6. Count One has a statutory maximum of 10 years; therefore, the base offense level is 6. USSG §2B1.1(a)(2). **6**

33. **Specific Offense Characteristics:** The total intended loss amount is more than $1,500,000 but not more than $3,500,000. Therefore, there is an 16 level increase pursuant to USSG §2B1.1(b)(1)(I). **+16**

34. **Specific Offense Characteristics:** If the offense involved 10 or more victims, increase by 2 levels. USSG §2B1.1(b)(2)(A). This offense involved 401 victims (400 individual tax payers and the IRS). Therefore, there is a two level increase. +2

35. **Specific Offense Characteristics:** If the offense involved the production of any (i) unauthorized access device or counterfeit access device, increase by 2 levels. USSG §2B1.1(b)(11)(B)(i). In the unpublished opinion of United States v. Torrez-Bonilla, 2014 WL 718426 (11th Cir. Feb. 26, 2014) the Eleventh Circuit held that when a defendant uses an individual's Social Security number to file a fraudulent tax return they are "duplicating" that number. In this opinion, the Court further held that "duplication" is equal to "production" and that Social Security numbers are access devices. In this case, the offense involved the use of victim's Social Security numbers to file the fraudulent tax returns. Therefore, this offense involved the production of unauthorized access devices, and the offense is increased by 2 levels. +2

36. **Victim Related Adjustment:** None. 0

37. **Adjustment for Role in the Offense:** None. 0

38. **Adjustment for Obstruction of Justice:** None. 0

39. **Adjusted Offense Level (Subtotal):** 26

40. **Chapter Four Enhancement:** None. 0

41. **Acceptance of Responsibility:** The defendant has clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels. USSG §3E1.1(a). -2

42. **Acceptance of Responsibility:** The defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the intention to enter a plea of guilty. Accordingly, the offense level is decreased by one additional level. USSG §3E1.1(b). -1

43. **Total Offense Level:** 23

**PART B. THE DEFENDANT'S CRIMINAL HISTORY**

**Juvenile Adjudication(s)**

| Date of Referral | Charge/Court | Date Sentence Imposed/Disposition | Guideline | Pts |
|---|---|---|---|---|
| 10/20/2006 (Age 16) | Battery Circuit Court (Juvenile Division), Hillsborough | 06/18/2007: Adjudicated delinquent, juvenile commitment | 4A1.2(e)(3) | 0 |

**Criminal History Computation**

57. The criminal convictions above result in a subtotal criminal history score of nine.

58. The defendant committed the instant offense while under a criminal justice sentence for 1)Fleeing and Attempt to Elude Police 2)Possession of Cocaine 3)Obstructing Officer without Violence 4)Driving with Suspended License 5)Possession of Drug Paraphernalia in Circuit Court of Hillsborough County, FL; Docket No.: 13-CF-3876; therefore, two points are added. USSG §4A1.1(d).

59. The total criminal history score is 11. According to the sentencing table in USSG Chapter 5, Part A, a criminal history score of 11 establishes a criminal history category of V.

**Other Criminal Conduct**

60. None.

**Pending Charges**

61. None.

**Other Arrests**

| | Date of Arrest | Charge | Disposition |
|---|---|---|---|
| 62. | 03/09/2005 (Age 14) | Battery<br>Circuit Court (Juvenile Division)<br>Hillsborough County, FL;<br>Docket No.: 05-CJ-2377 | 08/10/2005: Dismissed |

According to the juvenile petition, on March 9, 2005, the defendant was charged with intentionally touching or striking his mother, Yolanda Muhammad.

| | Date of Arrest | Charge | Disposition |
|---|---|---|---|
| 63. | 05/18/2005 (Age 14) | Battery (Domestic Violence)<br>Circuit Court (Juvenile Division),<br>Hillsborough County, FL;<br>Docket No.: 05-CJ-4795 | 08/10/2005: Dismissed |

According to the criminal report affidavit, officers with the Tampa, Florida, Police Department arrested the defendant after he reportedly punched his father several times in an attempt to break away from his father's grasp.

| | Date of Arrest | Charge | Disposition |
|---|---|---|---|
| 64. | 06/15/2005 (Age 14) | Aggravated Assault with a Weapon<br>Circuit Court (Juvenile Division)<br>Hillsborough County, FL;<br>Docket No.: 05-CJ-5673 | 06/22/2005: No file |

**Financial Condition: Ability to Pay**

101. On July 21, 2015, the defendant executed a financial affidavit for the Court declaring that he was financially insolvent. In response to this declaration, the Court appointed counsel for the defendant.

102. A review of the defendant's credit report reflects unpaid medical bills totaling over $6,000, and no other credit history.

103. The defendant reported that he has no assets and that, prior to his arrest in this case, his only income had consisted of $190 per month in food stamps. Additionally, the defendant was living with his mother at the time of his arrest, and he had been unemployed for several months preceding the arrest. Based on the defendant's financial profile, it does not appear that he has the ability to pay a fine in this case.

## PART D. SENTENCING OPTIONS

**Custody**

104. **Statutory Provisions:** Count 4: The maximum term of imprisonment is 10 years. 18 U.S.C. § 641. Count 11: The minimum term of imprisonment is two years and the maximum term is two years. 18 U.S.C. § 1028Aa1.

23

105. The term of imprisonment on Count 11 must be imposed consecutively to any other counts.

106. **Guideline Provisions:** Count 4: Based upon a total offense level of 23 and a criminal history category of V, the guideline imprisonment range is 84 months to 105 months. Count 11: The guideline sentence is the minimum term of imprisonment required by statute. USSG §2B1.6.

**Impact of Plea Agreement**

107. If the defendant had been convicted of the six other counts of Aggravated Identity Theft charged in Counts 9,10, and 12 through 15, he would have been subject to a possible additional two years of consecutive prison time for each count.

**Supervised Release**

108. **Statutory Provisions:** Count 4: The Court may impose a term of supervised release of not more than three years. 18 U.S.C. § 3583(b)(2). Count 11: The Court may impose a term of supervised release of not more than one year. 18 U.S.C. § 3583(b)(3).

109. Multiple terms of supervised release shall run concurrently. 18 U.S.C. § 3624(e).

110. **Guideline Provisions:** Count 4: Since the offense is a Class C Felony, the guideline range for a term of supervised release is 1 year to 3 years. USSG §5D1.2(a)(2). Count 11:

" EXHIBIT C "

" EXHIBIT C "

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

UNITED STATES OF AMERICA,

Plaintiff,

vs. CASE NO. 8:15-cr-255-T-23TGW
February 1, 2016
Tampa, Florida
8:35 - 9:51 a.m.

BOBBY MUHAMMAD,

Defendant.
_____________________________________/

TRANSCRIPT OF SENTENCING HEARING
(Document No. 54)
BEFORE THE HONORABLE STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

**APPEARANCES:**

For the Government: AMANDA LYNN RIEDEL, ESQ.
Assistant U.S. Attorney
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602
813/274-6000

For the Defendant: DEBRA BELNIAK TUOMEY, ESQ.
Debra Tuomey, Attorney at Law
5026 Cumberland Lane
Spring Hill, Florida 34607
352/584-0020

Court Reporter: Howard W. Jones, RPR, FCRR
801 N. Florida Avenue, Suite 15A
Tampa, Florida 33602
813/301-5024

Proceedings reported and transcribed by computer-aided stenography.

So I would request that the Court utilize the actual loss as opposed to the intended loss when calculating the Guidelines.

THE COURT: All right. Ms. Riedel?

MS. RIEDEL: For purposes of the record, I just want to be clear that the defendant isn't objecting to the intended loss number, which Probation scores and the government agrees is $3,089,219. I just didn't know if the government needed to come today to establish the validity of that number, which we're prepared to do. If she's not objecting that that is the intended loss --

THE COURT: She's not disputing the accuracy of that calculation for what it's worth, she's disputing that that's the applicable calculation, at least as far as I understand it.

MS. TUOMEY: Your Honor, my client is now informing me that he wants to dispute the intended loss if Ms. Riedel is able to prove that up to the government -- prove that up to Your Honor.

THE COURT: Well, I'm not usually confronted with spontaneous objections from the defendant for the first time at a hearing.

MS. TUOMEY: Yes, sir.

THE COURT: I wasn't aware that there had been any stated objection to that calculation. Your objection, as I

impossible or unlikely to occur. In other words, whether conditions already made the achievement of the scheme impossible, unknown -- however, unknown to the defendant.

So even -- as I understand it, even if the defendant as a general principle understands that not all of the instances of his scheme that he casts out forward will succeed, each one of them is put forward with the intent that it succeed. And while his expectation is that they won't all succeed, his intent is that they individually succeed.

I hate sports analogies, but here's one: It's like the batter who goes to bat and he knows before he goes that about seven or eight out of ten times that he goes to the plate he's going to make an out, but he doesn't intend to make an out, he intends something other than what occurs in certain instances.

In looking at this, even in consideration of the -- any amendments, it does seem to me that the intended loss is the larger of the two numbers here. Now, whether that number ought fully to be encompassed for the purpose of the ultimate sentence is a different issue, but as far as the numerical calculation, I believe that to be correct. So I will overrule that objection as well.

And in your -- I think you had at least one or two other objections, one to minor role or one talking about

child.

So based on that, I would be asking for a two-level departure based on my client's minimum or minor role in this conspiracy.

THE COURT: All right. Ms. Riedel?

MS. RIEDEL: Your Honor, the word evidence was used a lot. But really, there's no evidence in this case. It hasn't gone to trial other than what's admitted to in the PSR and what's admitted to in the plea agreement, it's not been objected to.

THE COURT: Correct.

MS. RIEDEL: The United States has an agent here and we're prepared to put on evidence as to Mr. Muhammad's role. But I want to look first at what he admitted to in his plea agreement.

He admitted to that from at least December 2011 through the date that he signed it in 2015, he entered into a conspiracy to defraud the IRS. As part of the scheme, he and others obtained and possessed means of identification for third parties without their knowledge.

He and others electronically filed and caused to be filed tax returns using these means of identification.

He and others directed that those tax refunds be put on reloadable debit cards in his name, in his sister's name, and in others' names with stolen identities.

She gets together with Mr. Muhammad. They start doing it together, including other members of his family.

I provided the discovery and the loss information on the totality of the Tiffani Williams conduct to the defendant so he could see it. But I absolutely made clear that everything that happened prior to the time he got together with Ms. Williams was not counted towards his loss. We were careful about that, because we didn't want to unfairly tack him with stuff that he had nothing to do with. And so his loss number starts from the time that he got involved, when he was filing and causing other people to file, when he was getting debit cards in his name sent to his address, when he was getting ancestry.com accounts in order to steal the identities, when he was receiving money that we traced to the debit cards, which we then know he used at ATMs in order to withdraw cash in subsequent progressions.

So he's not getting held accountable for anything other than his own conduct during the pendency of the three years he was in this conspiracy. He's already been discounted for loss from Ms. Williams, he has nothing to do with the Frazier case.

The Rodriguez case I also prosecuted. Raymond Rodriguez was a car dealer who knowingly sold cars to people in exchange for money he knew were drug proceeds and tax

I got involved with Mr. Muhammad, from Mr. Muhammad. And, lo and behold, there's the ancestry.com account in his name.

That's what the evidence is. The evidence is that he -- this relationship that he claims is so unequal that he was taken advantage of and he's arrested for dragging her down the stairs when she's pregnant.

Mr. Muhammad, at the very least, under these Guidelines applications is an average participant. He's certainly not minor. He deserves no reduction whatsoever. I'm not asking for a leader/organizer, but he participated from beginning to end in every facet of the scheme and benefited and knowingly participated.

And did they withdraw ultimately from the conspiracy? Yes, because it got too hard. The IRS started making it really hard to do this. Started getting harder to steal people's identities online, started getting harder to file false tax returns. That's why.

THE COURT: All right. Thank you, Ms. Riedel.

Anything further on that, Ms. Tuomey?

MS. TUOMEY: Yes, Your Honor. The only objection I would make would be that the government referred to page 17, paragraph 73, regarding an aggravated battery on a pregnant female. That was no filed. Mr. Muhammad has the presumption of innocence in that case. So to utilize those specific facts, he was not found guilty, he did not plead

an opportunity to speak always at a sentencing in the United States District Court. I believe the rule says you have a right to speak in mitigation of your sentence, which means to speak on your own behalf. So you're not required to say anything, but if you would like to say something, I would be happy to hear from you.

THE DEFENDANT: I would, Your Honor. A lot of the facts that the government is saying, I was advised to plead guilty because I was going to have to go to trial. Either plead guilty or go to trial and lose on all counts. Okay. I did accept the plea for 2011, but when I met Tiffani in 2011, I was just -- I was just going with her, I didn't have no knowledge what she was doing. From my knowledge, she was a teacher. I'm stuttering because I'm nervous. But she was a teacher. She was just feeding me money and looking out for me and that was it. Okay. I did indulge in the activity in 2013, but from 2011, 2012, I didn't indulge in that activity, she was just looking out for me.

I apologize to the Court for even being in this criminal activity, but the stuff -- a lot of stuff they saying, all this money and stuff, I never touched it. I never had none of that money. None of that money I never touched. And if I knew something -- that's why Tiffani told everything, because she knew everybody. She knew everybody, she knew what was going on. If I knew something, I would

" EXHIBIT D "

" EXHIBIT D "

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO. 8:15-cr-255-T-23TGW DATE: February 1, 2016

HONORABLE STEVEN D. MERRYDAY

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Amanda Lynn Riedel |
| vs. | |
| **BOBBY MUHAMMAD** | Debra Belniak Tuomey, CJA |
| COURT REPORTER: Bill Jones | DEPUTY CLERK: Lindsay Meadows |
| INTERPRETER: n/a | PROBATION: David C. Tremmel |
| TIME: 8:35 a.m. – 9:51 a.m. | TOTAL: 1 hour, 16 minutes |

**CRIMINAL MINUTES - SENTENCING REFORM ACT MINUTES**

The defendant was previously adjudged guilty of the offense in counts **four** and **eleven** of the indictment.

Counts one through three, five through ten, and twelve through fifteen of the indictment are dismissed in accord with the plea agreement.

The defendant objects to paragraph thirty-four of the pre-sentence report, which enhances the guideline calculation by two levels for the number of victims involved in the case. The defendant argues that most of the defendant's victims were deceased. The objection is **OVERRULED**.

The defendant objects to paragraph thirty-five of the pre-sentence report, which enhances the guideline calculation by two levels for use of an access device. The objection is **OVERRULED**.

The defendant objects to the utilization of "intended loss" within paragraph thirty-three of the pre-sentence report versus "actual loss." The objection is **OVERRULED**.

The defendant objects to the role calculation within paragraph thirty-seven of the pre-sentence report and argues for a minor role adjustment. The defendant requests a two level departure. The objection is **OVERRULED**.

Imprisonment: **ninety-four months**. This term consists of a term of seventy months on count four, and a term of twenty-four months on count eleven, to run consecutively to count four.

The court recommends confinement at a facility located in Coleman, Florida.

**The court moderated the offense by one offense level because of the wide range between the defendant's earlier maximum sentence range of six months and the present guideline sentence of seven years.** The offense level was reduced by one level.

Supervised Release: **thirty-six months**. This term consists of a thirty-six month term as to count four and a twelve month term as to count eleven, all such terms to run concurrently.

Fine: waived

| | |
|---|---|
| Restitution: $650,631 | The defendant shall p… …ion in the amount of $650,631 to the IRS at 33… …V. Pershing Avenue Attn: Mail Stop 6261, Restitution, Kansas City, MO 64108. This restitution obligation shall be payable to the Clerk, U.S. District Court, for distribution to the victim. Restitution shall be paid jointly and severally with Tiffani Pye Williams in Docket No: 8:14-cr-478-T-23TGW. While in Bureau of Prisons custody, the defendant shall either (1) pay at least $25 quarterly if he has a non-Unicor job or (2) pay at least 50% of his monthly earnings if he has a Unicor job. Upon release from custody, the defendant shall pay restitution at the rate of $100 per month. |

Special Assessment: $200, due immediately

The defendant shall participate in a substance abuse program (outpatient or inpatient or both) and follow the probation officer's instructions regarding the implementation of this court directive. Further, the defendant shall contribute to the costs of these services not to exceed an amount determined reasonable by the Probation Office's Sliding Scale for Substance Abuse Treatment Services. During and upon the completion of this program, the defendant is directed to submit to random drug testing.

The defendant shall be prohibited from incurring new credit charges, opening additional lines of credit, or obligating himself for any major purchases without approval of the probation officer.

The defendant shall provide the probation officer access to any requested financial information.

The preliminary order of forfeiture is incorporated into the final judgment.

The defendant shall cooperate in the collection of DNA as directed by the probation officer.

The mandatory drug testing provisions of the Violent Crime Control Act are imposed. The court orders the defendant to submit to random drug testing not to exceed 104 tests per year.

*********************************************

The defendant is remanded to the custody of the United States Marshal to await designation by the Bureau of Prisons.

The defendant is advised of right to appeal and to counsel on appeal.

| GUIDELINE RANGE DETERMINED AT SENTENCING (BEFORE DEPARTURES) | |
|---|---|
| Total Offense Level: | 23 |
| Criminal History Category: | V |
| Imprisonment Range: | 84 months–105 months (plus 2 years, consecutive to all other counts) |
| Supervised Release Range: | Ct. 4: 1 year–3 years, Ct. 11: 1 year |
| Restitution: | $650,631 |
| Fine Range: | $10,000 – $100,000 |
| Special Assessment: | $200 |

" EXHIBIT E "

" EXHIBIT E "

MASTER Spreadsheet for False Returns - Muhammad (012/18).xlsx

Muhammad

| Din | Name Line 1 | | Secondary SSN | | Refund Amt | Refund | Primary DOB | Primary DOD | Spouse DOB | Spouse DOD | Street Addr | City | State Cd | Zip Cd | Tax Prd | Self Occupation | W2 Cnt | Wthd Tax Amt | Total Dividends Amt | Gross Social Security | Taxable Social Security | Other 1099 Withholding Amt | Ip Address | Preparer Network Provider | Ip Date | Ip Time | Ip Time Zone | Ip E Mail Address | Routing And Transit Number | Bank Account Number | Bank | Bank Account Information |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 30209596002423 | ELLIS, KENNETH & SELVOLAUS DECD | SSN belongs to Marvin Ellis, Illinois, DOD 2/14/12 | 425283714 | SSN belongs to B Ellis, MI, DOD 7/20/2012 | $8,458 | $0 | 19360411 | 20120214 | 19131116 | 20120323 | 3220 E COMMANCHE AVE | Tampa | FL | 33610 | 201212 | Sales | 10 | 8,468 | 20132 | 21536 | 0 | 8468 | 108.33.9.76 | Verizon Online, LLC, Tampa, Fl | 20130715 | 104123 | PO | [illegible] | 031121169 | 9627621671142 | Suncorp Bank | Card in the name of Kenneth Ellis, 3220 E Commanche Ave, Tampa, FL |
| 30209596C11513 | ELLIS, MARCELLE DECD | | | | $9,959 | $0 | 19360708 | 20120408 | | | 12336 BRIDGE PINE | Riverview | FL | 33569 | 201212 | Retired | 00 | 9,959 | 20300 | 34632 | 9660 | 9959 | 108.33.9.76 | Verizon Online, LLC, Tampa, Fl | 20130715 | 112240 | PO | [illegible] | 031121169 | [illegible] | Suncorp Bank | Card in the name of Kenneth Ellis, 3220 E Commanche Ave, Tampa, FL |
| 30209596004043 | PATRICK, NANCY DECD | | | | $9,163 | $0 | 19170822 | 20121229 | | | 3220 E WEST ST | Tampa | FL | 33610 | 201212 | Sales | 00 | 9,163 | 20132 | 34632 | 7431 | 9163 | 108.33.9.76 | Verizon Online, LLC, Tampa, Fl | 20130716 | 222448 | PO | [illegible] | 031121169 | [illegible] | Suncorp Bank | Card in the name of Bobby Muhammad, 11323, Bridge Pine Dr, Riverview |
| 35209595C16123 | GOOD, BETTY DECD | | | | $9,163 | $0 | 19261006 | 20120216 | | | 11323 BRIDGE PINE DR | Tampa | FL | 33569 | 201212 | Retired | 00 | 9,163 | 20132 | 34632 | 7431 | 9163 | 50.10.247.6 | Clear Wireless, LLC, Tampa, FL | 20130711 | 190441 | PO | [illegible] | 031121169 | [illegible] | Suncorp Bank | Card in the name of Bobby Muhammad, 11323, Bridge Pine Dr, Riverview |
| 30229596C51203 | GARDNER, CHARLES & NORMA DECD | | 416C53090 | | $10,643 | $0 | 19490319 | 20120505 | 19140513 | 20120519 | 17608 E JUANITA LOOP | Eagle River | AK | 99577 | 201212 | Retired | 00 | 10,643 | 33457 | 34632 | 12977 | 10643 | 108.33.9.76 | Verizon Online, LLC, Tampa, Fl | 20130715 | 190218 | PO | [illegible] | 121089742 | [illegible] | H&R Block | HR Card (9614) in the name of Bobby Muhammad, T Williams boyfriend |
| 30209596C52423 | PATRICK, ROBERT & EMMETT DECD | | 230247542 | | $7,293 | $0 | 19400714 | 20120409 | 19340214 | 20120130 | 960 E SNOW HILL AVE | Wasilla | AK | 99654 | 201212 | Retired | 00 | 7,293 | 20102 | 10777 | 0 | 7293 | 108.33.9.76 | Verizon Online, LLC, Tampa, Fl | 20130715 | 172223 | PO | [illegible] | 121089742 | [illegible] | H&R Block | HR Card (9614) in the name of Bobby Muhammad, T Williams boyfriend |
| 30209564C13463 | MUHAMMAD, HALIMEN & ATIYYAH DECD | | 236354478 | DOD 4/14/12, Virginia | $9,163 | $7,217 | 19210615 | 20121424 | 19750410 | 20120416 | 12 P AVE | Tampa | FL | 33610 | 201212 | sales | 00 | 9,163 | 20132 | 34632 | 2724 | 9163 | 50.10.247.6 | Clear Wireless, LLC, Tampa, FL | 20130815 | 151023 | PO | [illegible] | 121089742 | [illegible] | H&R Block | HR Card (9614) in the name of Bobby Muhammad, T Williams boyfriend |
| 30211505737723 | RIVERA, LUZ M DECD & JOSE V | DOD 2/17/13, PR | 581439133 | | $7,019 | $0 | 19290728 | 20130217 | 19250626 | 20130111 | 11324 BRIDGE PINE | RIVERVIEW | FL | 33569 | 201212 | RETIRED | 00 | 9,953 | 47195 | 0 | 0 | 9953 | 50.9.125.110 | Clear Wireless, LLC, Tampa, FL | 20130415 | 074835 | MO | [illegible] | 121089742 | [illegible] | H&R Block | HR Card (9614) in the name of Bobby Muhammad, T Williams boyfriend |
| 12221505421143 | RIVERA, MARIA DECD & SAMUEL | DOD 2/24/13, NY | 137834686 | DOD 1/1/13, Arizona | $7,019 | $7,019 | 19171013 | 20130224 | 19190808 | 20130101 | 11323 BRIDGE PINE | RIVERVIEW | FL | 33569 | 201212 | RETIRED | 00 | 9,955 | 47195 | 0 | 0 | 9955 | 50.9.108.118 | Clear Wireless, LLC, Tampa, FL | 20130413 | 082941 | MO | [illegible] | 121089742 | [illegible] | H&R Block | HR Card (9614) in the name of Bobby Muhammad, T Williams boyfriend |
| 30221527008C99 | ROSS, SARAH & JACK DECD | DOD 1/16/13, Kansas | 227644681 | DOD, 4/16/13, NC | $7,333 | $0 | 19250811 | 20130116 | 19411111 | 20130416 | 8496 DRY | RIVERVIEW | FL | 33569 | 201212 | SALES | 00 | 8,240 | 30999 | 0 | 0 | 8240 | 50.9.105.118 | Clear Wireless, LLC, Tampa, FL | 20130508 | 230842 | MO | [illegible] | 121089742 | [illegible] | H&R Block | HR Card (9614) in the name of Bobby Muhammad, T Williams boyfriend |
| 30221526132253 | ROSS, SARAH & JOHN DECD | | C51406798 | | $7,229 | $0 | 19271167 | 20130617 | 19500527 | 20130621 | 56 GREEN ST | RIVERVIEW | FL | 33569 | 201212 | RETIRED | 00 | 8,240 | 30999 | 0 | 0 | 8240 | 50.9.108.118 | Clear Wireless, LLC, Tampa, FL | 20130508 | 212239 | MO | [illegible] | 121089742 | [illegible] | H&R Block | HR Card (9614) in the name of Bobby Muhammad, T Williams boyfriend |
| 30221487683463 | FALLAH E LUCILLE E DECD & E SERRANO | Faulkner, Virginia, DOD 1/7/2013 | 562630217 | Sarasota, PR, 1/14/2013 | $7,302 | $8,872 | | | | | 11324 BRIDGE PINE | RIVERVIEW | FL | 33569 | 201212 | | | 6,225 | | | | | 66.87.2.13 | Sprint, Chicago, Il | 20130329 | 132949 | MO | [illegible] | 121089742 | [illegible] | H&R Block | HR Card (9614) in the name of Bobby Muhammad, T Williams boyfriend |
| 30221487938753 | REEVES, HELEN F DECD & WENDELL | DOD, 2/13/13, Virginia | 422225547 | | $8,623 | $0 | 19300801 | 20130213 | 19290811 | 20130226 | 11325 BRIDGE PINE | RIVERVIEW | FL | 33569 | 201212 | RETIRED | 00 | 8,792 | 23499 | 0 | 0 | 8792 | 66.87.2.15 | Sprint, Chicago, Il | 20130328 | 135829 | MO | [illegible] | 121089742 | [illegible] | H&R Block | HR Card (9614) in the name of Bobby Muhammad, T Williams boyfriend |
| 30221498240683 | COLE, ROBERT C DECD & HELEN F | | 223683950 | | $7,903 | $0 | 19300516 | 20130120 | 19210731 | 20130130 | 11324 BRIDGE PINE | RIVERVIEW | FL | 33569 | 201212 | RETIRED | 00 | 8,220 | 30999 | 0 | 0 | 8220 | 66.87.2.144 | Sprint, Chicago, Il | 20130408 | 075747 | MO | [illegible] | 121089742 | [illegible] | H&R Block | HR Card (9614) in the name of Bobby Muhammad, T Williams boyfriend |
| 30209624C11783 | THURMAN, BARBARA J | DOD, 3/31/2013, Wisconsin | | | $4,549 | $0 | 19271106 | 20130331 | | | 3287 DAWN ST | Casper | WY | 82305 | 201212 | retired | 00 | 11,334 | 0 | 12543 | 10662 | 11334 | 68.243.73.134 | Ft Worth, Texas | 20130812 | 164123 | PO | [illegible]@aol.com | 121089742 | [illegible] | H&R Block | HR Card (9614) in the name of Bobby Muhammad, T Williams boyfriend |
| 30209431C53879 | MUHAMMAD, BOBBY | | | | $4,879 | $0 | 1960C728 | | | | 3220 E COMMANCHE AVE | TAMPA | FL | 33610 | 201212 | SALESMAN | 00 | 4,879 | 0 | 15005 | 0 | 4679 | 71.99.231.94 | Verizon Online, LLC, Tampa, Fl | 20130119 | 235813 | CS | [illegible]@GMAIL.COM | 121089742 | [illegible] | H&R Block | HR Card (9614) in the name of Bobby Muhammad, T Williams boyfriend |
| 30221469778953 | CRAWFORD, RICHARD W | Longboat Key, FL, criminal history | | | $1,676 | $0 | 19690320 | | | | 19502 MARBLE CIR | EAGLE RIVER | AK | 99577 | 201212 | HOUSEKEEPER | C1 | 1,629 | 0 | 0 | 0 | 0 | 50.9.82.4 | Clear Wireless, LLC, Tampa, FL | 20130310 | 182705 | MO | [illegible] | 121089742 | [illegible] | H&R Block | HR Card (9614) in the name of Bobby Muhammad, T Williams boyfriend |
| 30211487003293 | REEVES SUSIE O DECD & RICHARD B | | 541328610 | | $4,835 | $4,835 | | | | | 11327 BRIDGE PINE | RIVERVIEW | FL | 33569 | 201112 | | | 11,136 | | | | | 66.87.2.13 | Sprint, Chicago, Il | 20130329 | 164321 | MO | [illegible] | 121089742 | [illegible] | H&R Block | HR Card (9614) in the name of Bobby Muhammad, T Williams boyfriend |
| 30221327019C33 | ROSS, JADA & JAMES DECD | New York, 3/1/2013 | 243768558 | California, 3/3/2013 | $7,307 | $0 | 19551127 | 20130301 | 19471130 | 20130303 | YELLOW ST | RIVERVIEW | FL | 33569 | 201212 | FEEDER | 00 | 8,240 | 30999 | 0 | 0 | 8240 | 50.9.129.118 | Clear Wireless, LLC, Tampa, FL | 20130307 | 080329 | MO | [illegible] | 121089742 | [illegible] | H&R Block | HR Card (9571) in the name of Jamilah Muhammad, card sent to 11323 Bridge Pine, Muhammad lived with Bobby on Commanche |
| 30211491441293 | VASQUEZ, DORA DECD & EDWIN SERRANO | Texas, 1/6/2013 | 052348223 | PR, 2/16/2013 | $7,302 | $7,294 | 19120806 | 20130106 | 19230815 | 20130216 | 11323 BRIDGE PINE | RIVERVIEW | FL | 33569 | 241212 | RETIRED | 00 | 4,220 | 30999 | 0 | 0 | 8220 | 66.87.2.227 | Sprint, Chicago, Il | 20130403 | 194139 | MO | [illegible] | 121089742 | [illegible] | H&R Block | HR Card (9571) in the name of Jamilah Muhammad, card sent to 11323 Bridge Pine, Muhammad lived with Bobby on Commanche |
| 30209534C54C63 | ELLIS, KENNETH & APRIL DECD | SSN belongs to Antonio Ellis, Maryland, 2/13/13 | 277909006 | DOD 2/14/13, Kentucky | $9,349 | $0 | 19190917 | 20130212 | 19681022 | 20130216 | 11327 BRIDGE PINE | Riverview | FL | 33569 | 201212 | sales | 00 | 9,163 | 20132 | 34632 | 2724 | 9163 | 108.33.9.76 | Verizon Online, LLC, Tampa, Fl | 20130603 | 122947 | PO | [illegible] | 121089742 | [illegible] | H&R Block | HR Card (0673) in the name of Kenneth Ellis, lived with Bobby on |
| 30209564C17253 | FREEMAN, GERALDINE & JEROME DECD | | 237989821 | | $9,163 | $0 | 19290215 | 20120308 | 1919C720 | 20121811 | 11234 BRIDGE PINE DR | Brandon | FL | 33569 | 201212 | Sales | 00 | 9,163 | 20132 | 34632 | 2724 | 9163 | 108.33.9.76 | Verizon Online, LLC, Tampa, Fl | 20130615 | 170646 | PO | [illegible] | 121089742 | [illegible] | H&R Block | HR Card (0673) in the name of Kenneth Ellis, lived with Bobby on |

Muhammad

| Dln | Name Line 1 | | Secondary SSN | | Refund Amt | Ref Loss | Primary DOB | Primary DOD | Spouse DOB | Spouse DOD | Street Addr | City | State Cd | Zip Cd | Tax Prd | Self Occupation | W 2 Cnt | Wages Tax Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 13221503434893 | RIVERA, CARLO DECD & SYLVESTRA | | 455029708 | | $7,018 | $0 | 19251130 | 20130131 | 19271231 | 20130131 | 11324 BRIDGE PINE | RIVERVIEW | FL | 33569 | 201212 | RETIRED | 00 | 9,955 |
| 13221527009218 | ROSS, IVA & JOHN DECD | | 353463243 | | $7,307 | $0 | 19140305 | 20130308 | 19510219 | 20130123 | 1312 BAY ST | RIVERVIEW | FL | 33569 | 201212 | JANITOR | 00 | 8,240 |
| 30211506445379 | KNIGHT, NANCY DECD & M | | 019183108 | | $7,019 | $7,019 | 19290129 | 20130129 | 19210302 | 20130123 | 11323 BRIDGE PINE | RIVERVIEW | FL | 33569 | 201212 | RETIRED | 01 | 9955 |
| 30211537584453 | KNIGHT, GEORGE E DECD | | 358341292 | | $7,019 | $7,019 | 19281206 | 20110223 | 19240526 | 20130204 | 11324 BRIDGE PINE | RIVERVIEW | FL | 33569 | 201212 | RETIRED | 00 | 9955 |
| 13221503346283 | RIVERA, CLARELDA DECD | | 061288928 | | $7,019 | $7,019 | 19311025 | 20130131 | 19221606 | 20130207 | 11325 BRIDGE PINE | RIVERVIEW | FL | 33569 | 201212 | RETIRED | 00 | 9955 |
| | | | | | | | | | | | | | | | | | | |
| | | | | | $204,813 | $58,899 | | | | | | | | | | | | |
| | | | | | $7,302 | $7,302 | | | | | | | | | | | | |
| | | | | | $212,115 | $66,201 | | | | | | | | | | | | |

| Dln | Total Dividends Amt | Gross Social Security | Paid Social Security | Other 1099 Withholding Amt | Ip Address | Preparer Network Provider | Ip Date | Ip Time | Ip Time Zone | Ip E Mail Address | Routing And Transit Number | Bank Account Number | Bank | Bank Account Information |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 13221503434893 | 47195 | 0 | 0 | 9955 | 50.9.105.118 | Clear Wireless, LLC, Tampa, FL | 20130412 | 082500 | MD | Steven1234@yahoo.com | 101089742 | 4760725036917067 | H&R Block | H&R Card (0673) in the name of Kenneth Ellis, lived with Bobby M |
| 13221527009218 | 92000 | 0 | 0 | 8240 | 50.9.105.118 | Clear Wireless, LLC, Tampa, FL | 20130506 | 233348 | MD | Fred32@yahoo.com | 101089742 | 4760725036917067 | H&R Block | H&R Card (0673) in the name of Kenneth Ellis, lived with Bobby M |
| 30211506445379 | 47195 | | 0 | 9955 | 72.91.216.90 | | 20130415 | 222226 | MD | [illegible]1234@yahoo.com | 101089742 | 4760725036917067 | H&R Block | H&R Card (0673) in the name of Kenneth Ellis, lived with Bobby M |
| 30211537584453 | 47195 | | 0 | 9955 | | | | | | | 101089742 | 4760725036917067 | H&R Block | H&R Card (0673) in the name of Kenneth Ellis, lived with Bobby M |
| 13221503346283 | 47195 | | 0 | 9955 | | | | | | | 101089742 | 4760725036917067 | H&R Block | H&R Card (0673) in the name of Kenneth Ellis, lived with Bobby M |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |